UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JULIANA MADAKI,**

   Plaintiff,

v.                                                                        No. 4:21-cv-0760-P

**AMERICAN AIRLINES, INC.,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim. ECF No. 15. Having considered the Motion, Plaintiff's Response (ECF No. 20), and Defendant's Reply (ECF No. 21), the Court concludes that the Motion should be **GRANTED in part.**

## BACKGROUND

Plaintiff Juliana Madaki became an employee of Defendant American Airlines, Inc. as a propulsion engineer in October 2015. Pl.'s Am. Compl. ¶¶ 8–9, ECF No. 12. Soon after beginning in this role, one of Madaki's coworkers allegedly began to sexually harass her, commenting on her "butt" several times.[1] *Id.* ¶¶ 11–13. Madaki reported the conduct to her supervisor; however, the harassment allegedly continued through May 2016 until Madaki again reported the conduct. *Id.* ¶¶ 16–18. After American Airlines investigated Madaki's report, the harassing employee was forced to retire. *Id.* ¶ 19. In March 2017, a manager allegedly accused Madaki of lying in her reports against the employee. *Id.* ¶¶ 22–26. Then the manager said Madaki would have to live with the effects of her report and that he would "do whatever it took

---

[1] The comments included: "Look at her butt in those pants;" "look at how big that ass is;" and "[her] buttocks is in his face… Oh my God, look at her buttocks! They are in my eyes, help me…. Someone do something… someone help me."

to get rid of her." *Id.* Madaki notified the manager's supervisor of these comments and reported her fear of retaliation. *Id.* ¶ 27.

In June 2018, Madaki applied for a promotion but was denied. *Id.* ¶¶ 25–29. In July, Madaki was placed on a performance improvement plan due to her communication skills and her confrontations with co-workers. *Id.* ¶¶ 29, 31. Madaki filed a complaint about her supervisor's failure to provide further information about her performance improvement plan. *Id.* ¶ 31. On October 29, 2018, Madaki was informed that she was fired.

After Madaki was fired, she filed a charge of discrimination with the Fort Worth Human Relations Commission and the Equal Employment Opportunity Commission ("EEOC") on August 1, 2019. Pl.'s Compl. Ex. 2, ECF No. 1. On this form, Madaki checked boxes indicating she had been discriminated based on sex and retaliation. *Id.* She also briefly described her treatment and firing as "retaliation to my complaint of discrimination." *Id.* On March 19, 2021, the EEOC issued a right to sue letter to Madaki and on June 17, Madaki initiated this action against American Airlines, claiming sexual and racial discrimination, a hostile work environment, and retaliation. Pl.'s Compl. and Ex. 1, ECF No. 1.

American Airlines moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to timely exhaust administrative remedies and failure to state a claim. Def.'s Mot. to Dismiss at 1–3. Madaki opposed the motion. *See generally* Pl.'s Resp.

## LEGAL STANDARD

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under

Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## B. Title VII Exhaustion Requirements

Title VII provides legal remedies to employees that suffer from unlawful employment practices, including racial or sexual discrimination. 42 U.S.C. § 2000e-2. An employee must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred if the employee initially instituted proceedings with a state or local agency seeking relief from the action. 42 U.S.C. § 2000e-5(e)(1). An employee must timely file this charge "before seeking judicial relief" under Title VII. *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018).

Though the administrative exhaustion requirement is not jurisdictional, failure to meet this requirement can bar liability. *See id.* at 307. Requiring administrative exhaustion is a "mainstay of proper enforcement of Title VII remedies." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 272 (5th Cir. 2008). The purpose of the charge is to "trigger the investigatory and conciliatory procedures of the EEOC." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006). Allowing claims in court that have not been administratively exhausted would "thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain*, 519 F.3d at 273.

To this end, the claims an employee can bring in a lawsuit are limited to "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco*, 448 F.3d at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). While the scope of an EEOC charge should be "construed liberally," filing a charge is not *carte blanche* to bring any claim possible under Title VII. *See id.* at 788–89. The charge's substance, not just its label, determines the scope of claims that a plaintiff may bring. *Id.* at 789. For example, courts have barred plaintiffs' claims for sex discrimination due to a lack of administrative exhaustion despite similar claims of race and age discrimination in the EEOC charge because there was "no evidence that the EEOC considered sex discrimination." *See, e.g., Young v. City of Hous.*, 906 F.2d 177, 179–80 (5th Cir. 1990).

4

Additionally, the 300-day time bar begins on the day that the discriminatory act "happened;" a party who fails to meet that deadline "lose[s] the ability to recover for it." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Claims for discrete acts of discrimination are independent from each other and each trigger their own limitations period. *Id.* at 113. While previous acts of harassment or discrimination may be used as evidence or examples of past practices, only timely claims are actionable. *Id.* at 114. However, because a hostile work environment claim "occurs over a series of days or perhaps years and, . . . [is] based on the cumulative effect of individual acts," determining when such claims are untimely is more difficult. *Id.* at 116. While acts that are part of the hostile work environment claim may occur outside of the proscribed time can be considered, an employee still must file a charge "within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118. Further, each act must be "part of the whole" unlawful employment practice; unless the employer took some measure to address the conduct or the subsequent discriminatory acts are unrelated, an employer may be liable for all acts as a continuing violation of Title VII. *Id.*

## ANALYSIS

American Airlines challenges Madaki's claims as not properly exhausted and for failure to state a plausible claim. The Court will first analyze whether her claims were fully administratively exhausted and then whether her claims were timely filed before turning to whether Madaki stated a plausible claim.

### A. Madaki failed to administratively exhaust her claims for race discrimination.

Although Madaki did file a charge of discrimination with the EEOC, her charge did not "trigger the investigatory and conciliatory procedures" for a race discrimination claim. *Pacheco*, 448 F.3d at 788–89. Madaki concedes that she "failed to check the appropriate boxes" on her EEOC charge. Pl.'s Resp. at 4. While the failure to check the correct box alone does not bar her claims, *see Sanchez*, 431 F.2d at 455, Madaki's racial discrimination claim could not have reasonably grown out of her

5

EEOC charge. Her EEOC complaint clearly states that she believes that she was "discharged in retaliation to [her] complaint of sexual harassment." Pl.'s Compl. Ex. 2. Madaki does not mention race once in the charge. *Id.* But, she explicitly mentions sexual harassment five times and retaliation three times. *Id.* Madaki does not allege that the EEOC considered race discrimination in its investigation. The first time Madaki raises a claim of racial discrimination is in her complaint. Pl.'s Compl. ¶ 33. Further, Madaki never connects her treatment to her race (other than her allegation, first raised in the complaint, that American Airlines placing Madaki on a performance improvement plan for her communication style was a "microaggression"). Pl.'s Compl. ¶ 40. Thus, the scope of the EEOC's investigation could not have reasonably included any claims of racial discrimination.

Unlike her claim of race discrimination, Madaki's charge sufficiently contained allegations of both retaliation and sex discrimination. As noted above, the charge clearly marked both forms of discrimination and the charge narrative contained facts alleging retaliation after reporting sex discrimination. Thus, the scope of the EEOC investigation which could reasonably grow out of the charge would include the retaliation and the underlying sex discrimination, but not include any claim of race discrimination. Accordingly, Madaki's claim for racial discrimination is **DISMISSED with prejudice.**

### B. Madaki failed to timely exhaust her claims for hostile work environment or sex discrimination.

Because Madaki filed her charge of discrimination on August 1, 2019, Pl.'s Compl. Ex. 2, any allegations must have occurred on or after October 5, 2018 to be timely. Madaki's allegations of sexual harassment and a hostile work environment based on her sex begin as far back as 2015.[2] Pl.'s Am. Compl. ¶¶ 10–12. But she does not allege any sexual harassment after the harassing employee was forced to retire in 2016. *See* Pl.'s Am. Compl. ¶¶ 19–34. Her subsequent hostile work environment allegations stem from her claims of retaliation. *Id.* ¶22–27

---

[2]The Court does not address the timeliness of Madaki's retaliatory discharge claims because, as American Airlines concedes in its brief, her termination occurred within the 300-day period. Def.'s Mot. to Dismiss at 6–7.

("[H]er career was limited because she was responsible for White leaving the company.") ("[S]he felt like she was being retaliated against for reporting White to human resources."). Thus, the later actions are not related to her allegations of sexual harassment and would not constitute a continuing violation. *See Morgan*, 536 U.S. at 118. Moreover, Madaki concedes that Defendant forced her harasser to retire after investigating her claim, an "intervening action by [her] employer" that demonstrates the later conduct "was no longer part of the same hostile environment claim." *Id.* Because the sexual harassment occurred outside of the 300-day period before she filed her charge and it is not part of a continuing violation, Madaki's claims are untimely. Therefore, her claims of sexual discrimination or a hostile work environment are **DISMISSED with prejudice.** [3]

### C. American Airlines' Motion to Dismiss for failure to state a plausible rehabilitation claim is denied.

American Airlines moved to dismiss Madaki's claim of retaliation for failure to state a plausible claim. A Title VII retaliation claim requires Madaki to allege that "(1)[s]he engaged in an activity protected by Title VII; (2) [s]he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Tejada*, 617 F. App'x at 328 (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). Madaki alleges that she engaged in protected activity by reporting sexual harassment by an employee; that she was fired, an adverse employment action; and that her manager stated that he would "do whatever it took to get rid of her"

---

[3] Madaki concedes that the Fifth Circuit has declined to decide whether a retaliatory hostile work environment claim exists. Pl.'s Resp. at 5. The Court here declines to create this cause of action. To the extent Madaki attempts to make out such a claim, "denials of promotions" and "claims of isolation and ostracism" are not sufficiently offensive or harassing to rise to the level of a hostile work environment, though such allegations could sufficiently support a Title VII claim for retaliation. *Montgomery-Smith v. George*, 810 F. App'x 252, 259–60 (5th Cir. 2020); *see also Tejada v. Travis Ass'n for the Blind*, 617 F. App'x 325, 328 (5th Cir. 2015). Thus, failure to promote or the decision to place her on an improvement plan would not constitute a hostile work environment. Further, none of these acts occurred within 300 days of when she filed the EEOC charge. Because no act that would be part of the hostile work environment occurred within the limitations period, her claims would also be untimely. Accordingly, Madaki's retaliatory hostile work environment claims are **DISMISSED with prejudice**.

because she reported the harassment. Pl.'s Am. Compl. ¶¶ 18, 26, 34. Thus, Madaki has pled a plausible retaliatory discharge claim and American Airlines' Motion to dismiss this claim should be **DENIED in part.**

## CONCLUSION

For the foregoing reasons, the Court concludes that Madaki's claims of sexual harassment, racial discrimination, and a hostile work environment are barred. Therefore, American Airlines' Motion to Dismiss is **GRANTED in part** and these claims are **DISMISSED with prejudice.**

**SO ORDERED** on this **25th day** of **January, 2022**.

_____
Mark T. Pittman
United States District Judge